UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT L.P.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, Commissioner of Social Security Administration, <br><br> Defendant. | Case No. 2:20-cv-05716-JC <br><br> MEMORANDUM OPINION AND ORDER OF REMAND |

## I. SUMMARY

On June 26, 2020, plaintiff filed a Complaint seeking review of the Commissioner of Social Security's denial of his application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross-motions for summary judgment (respectively, "Plaintiff's Motion" and "Defendant's Motion"). The Court has taken the parties' arguments under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; Case Management Order ¶ 5.

---

[1] Plaintiff's name is partially redacted to protect his privacy in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On January 24, 2017, plaintiff protectively filed an application for Supplemental Security Income, alleging disability beginning on January 9, 1995, due to bipolar disorder, schizophrenia, depression, chest pain, and high blood pressure. (See Administrative Record ("AR") 20, 176-77, 189, 194). An Administrative Law Judge ("ALJ") subsequently examined the medical record and, on March 14, 2019, heard testimony from plaintiff (who was represented by counsel) and a vocational expert. (AR 33-60). On April 11, 2019, the ALJ determined that plaintiff has not been disabled since January 24, 2017, the application date. (AR 20-29). Specifically, the ALJ found: (1) plaintiff has the following severe impairments: major depressive disorder, recurrent, severe, without psychotic features; and schizophrenia, paranoid vs. bipolar disorder (AR 23); (2) plaintiff's impairments, considered individually or in combination, do not meet or medically equal a listed impairment (AR 24); (3) plaintiff retains the residual functional capacity[2] to perform a full range of work with certain nonexertional limitations (AR 31); (4) plaintiff has no past relevant work (AR 27); (5) plaintiff is capable of performing other jobs that exist in significant numbers in the national economy, specifically "linen room attendant," "hand packager," "cleaner II," "routing clerk," "advertising material distributor," and "subassembler" (AR 28); and (6) plaintiff's statements regarding the intensity,

///

---

[2] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

persistence, and limiting effects of subjective symptoms were inconsistent with the medical evidence and other evidence in the record (AR 26).

On April 22, 2020, the Appeals Council denied plaintiff's application for review of the ALJ's decision. (AR 1-3).

## III. APPLICABLE LEGAL STANDARDS

### A. Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted), superseded by regulation on other grounds; 20 C.F.R. §§ 404.1505(a), 416.905. To be considered disabled, a claimant must have an impairment of such severity that he is incapable of performing work the claimant previously performed ("past relevant work") as well as any other "work which exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

To assess whether a claimant is disabled, an ALJ is required to use the five-step sequential evaluation process set forth in Social Security regulations. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006) (describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520, 416.920). The claimant has the burden of proof at steps one through four – *i.e.*, determination of whether the claimant was engaging in substantial gainful activity (step 1), has a sufficiently severe impairment (step 2), has an impairment or combination of impairments that meets or medically equals one of the conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and retains the residual functional capacity to perform past relevant work (step 4). Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). The

3

Commissioner has the burden of proof at step five – *i.e.*, establishing that the claimant could perform other work in the national economy. Id.

### B. Federal Court Review of Social Security Disability Decisions

A federal court may set aside a denial of benefits only when the Commissioner's "final decision" was "based on legal error or not supported by substantial evidence in the record." 42 U.S.C. § 405(g); Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted). The standard of review in disability cases is "highly deferential." Rounds v. Comm'r of Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks omitted). Thus, an ALJ's decision must be upheld if the evidence could reasonably support either affirming or reversing the decision. Trevizo, 871 F.3d at 674-75 (citations omitted). Even when an ALJ's decision contains error, it must be affirmed if the error was harmless. See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if (1) inconsequential to the ultimate nondisability determination; or (2) ALJ's path may reasonably be discerned despite the error) (citation and quotation marks omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Trevizo, 871 F.3d at 674 (defining "substantial evidence" as "more than a mere scintilla, but less than a preponderance") (citation and quotation marks omitted). When determining whether substantial evidence supports an ALJ's finding, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]" Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

Federal courts review only the reasoning the ALJ provided, and may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely." Trevizo, 871 F.3d at 675 (citations omitted). Hence, while an ALJ's decision need not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's

reasoning "in a way that allows for meaningful review." <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 492 (9th Cir. 2015) (citing <u>Treichler</u>, 775 F.3d at 1099).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. <u>Brown-Hunter</u>, 806 F.3d at 492 (citations omitted). When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. <u>See</u> <u>Marsh v. Colvin</u>, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

## IV.  DISCUSSION

Plaintiff claims that the ALJ erred in rejecting the opinion of examining physician Dr. Reynaldo Abejuela, M.D. (Plaintiff's Motion at 7-14). For the reasons stated below, the Court finds that the ALJ erred on this basis. Since the Court cannot find that the error was harmless, a remand is warranted.

### A.  Pertinent Law

In Social Security cases, the amount of weight given to medical opinions generally varies depending on the type of medical professional who provided the opinions, namely "treating physicians," "examining physicians," and "nonexamining physicians." 20 C.F.R. §§ 404.1527(c)(1)-(2) & (e), 404.1502, 404.1513(a); 20 C.F.R. §§ 416.927(c)(1)-(2) & (e), 416.902, 416.913(a); <u>Garrison</u>, 759 F.3d at 1012 (citation and quotation marks omitted). A treating physician's opinion is generally given the most weight, and may be "controlling" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); <u>Revels v. Berryhill</u>, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). In turn, an examining, but non-treating physician's opinion is generally entitled to less weight than a treating physician's, but more weight than a nonexamining physician's opinion. <u>Garrison</u>, 759 F.3d at 1012 (citation omitted).

An ALJ may provide "substantial evidence" for rejecting a medical opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Garrison, 759 F.3d at 1012 (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)) (quotation marks omitted). An ALJ must provide more than mere "conclusions" or "broad and vague" reasons for rejecting a treating or examining doctor's opinion. See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (citation omitted). "[The ALJ] must set forth his own interpretations and explain why they, rather than the [doctor's], are correct." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).

## B. Medical Opinions

Dr. Reynaldo Abejuela, M.D., performed a consultative psychiatric examination on April 25, 2017. (AR 271-78). A mental status exam revealed that plaintiff was emotionally unstable, easily distracted, and unable to focus. (AR 274). Dr. Abejuela observed poor eye contact, psychomotor retardation with slowness of movement, slow and monotonous speech with a depressive tone, slow responses to questions, decreased concentration and attention, and impaired cognitive functioning. (AR 274). He also observed that plaintiff had restricted affect and was depressed, apathetic, withdrawn, and anxious. (AR 274). Dr. Abejuela noted perceptual disturbance, with paranoid ideations and auditory and visual hallucinations, as well as poor impulse control and inadequate insight. (AR 274). Moreover, plaintiff demonstrated a decreased attention span and concentration, with impaired short-term and long-term memory. (AR 274). Dr. Abejuela opined that the objective findings in the mental status examination were consistent with plaintiff's subjective symptoms of depression and anxiety. (AR 275). He diagnosed plaintiff with "Schizophrenia, Paranoid vs. Bipolar Disorder" (AR 275), and opined that plaintiff was moderately impaired in his occupational and social functioning (AR 277). More specifically, Dr. Abejuela noted that

plaintiff was moderately impaired in his ability to perform daily activities; to maintain social functioning; to maintain concentration, persistence, and pace; to understand, carry out, and remember simple or complex instructions; to respond to coworkers, supervisors, and the public; to respond appropriately to usual work situations; and to deal with changes in a routine work setting. (AR 276-77).

Dr. Heather M. Abrahimi, Psy.D., a state agency psychological consultant, reviewed the record and assessed plaintiff's mental functioning on May 11, 2017. (AR 89-94). Dr. Abrahimi gave significant weight to Dr. Abejuela's opinion and purported to adopt it for her assessment. (AR 90, 92). She found that plaintiff was moderately limited in his ability to understand, carry out, and remember detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in coordination with or in proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; to respond appropriately to changes in the work setting; and to set realistic goals or make plans independently of others. (AR 92-94). Dr. Abrahimi found, however, that plaintiff was "not significantly limited" in his ability to understand, remember, and carry out simple instructions; to make simple work-related decisions; to sustain an ordinary routine without special supervision; to ask simple questions or request assistance; to accept instructions and respond appropriately to criticism from supervisors; to maintain socially appropriate behavior; to be aware of normal hazards and take appropriate precautions; and to travel in unfamiliar places or use public transportation. (AR 93-94). Dr. Abrahimi thus opined, overall, that plaintiff can understand, remember and sustain concentration, pace, and persistence

7

for simple routines throughout a normal workday or workweek; accept routine supervision and interact with coworkers in a non-collaborative and superficial basis; have brief and infrequent public contact; adapt to a routine and predictable work environment; recognize typical hazards; travel to routine locations; and set goals independently within this limited framework. (AR 94).

### C. ALJ's Assessment

The ALJ assigned little weight to Dr. Abejuela's examining opinion, while remarking that the opinion "relies on a vague use of 'moderate' to describe [plaintiff's] impairments." (AR 27). The ALJ gave great weight to Dr. Abrahimi's non-examining opinion because it was "supported with explanation" and "consistent with the record as a whole." (AR 27). Based on the ALJ's assessment of the record overall, the ALJ found that plaintiff retains the residual functional capacity to: (i) understand, remember, and sustain concentration, pace, and persistence for simple routines throughout a normal workday and workweek; (ii) accept routine supervision and interact with coworkers in a non-collaborative and superficial basis; (iii) have brief and infrequent public contact; (iv) adapt to a routine and predictable work environment; (v) recognize typical hazards; (vi) travel to routine locations; and (vii) set goals independently. (AR 25).

### D. Analysis

The ALJ failed to provide any specific, legitimate, legally sufficient reasons to reject Dr. Abejuela's opinion. The ALJ's sole reason – that the opinion "relies on a vague use of 'moderate'" (AR 27) – does not suffice, particularly as it fails to account for how this commonly used term, "moderate," could be so "vague" as to render the opinion unusable or unreliable.[3] See King v. Comm'r of Soc. Sec.

---

[3] Indeed, the ALJ himself used this term, at step two of his analysis (AR 24-25) – as did Dr. Abrahimi, the nonexamining psychiatric consultant, albeit while also providing a narrative
(continued...)

8

Admin., 475 F. App'x 209, 209-10 (9th Cir. 2012) (Reinhardt, J., dissenting) ("Courts, physicians, vocational experts . . . and other ALJs use the term 'mild to moderate' to describe and assess claimants' limitations without any difficulty."); Dean v. Colvin, 2015 WL 6158874, at *7 (W.D. Wash. Sept. 29, 2015) ("[T]he Court is particularly troubled by the ALJ's rejection of Dr. Dixon's opinion as 'vague' based primarily upon Dr. Dixon's use of terms such as 'mild,' 'moderate,' 'marked,' or 'severe' to describe plaintiff's functional capacity – terms which are commonly used to describe claimant's limitations in the social security context."), report and recommendation adopted, 2015 WL 6158913 (W.D. Wash. Oct. 19, 2015). Moreover, if the ALJ found the term "moderate" to be so vague or ambiguous, the ALJ had a duty to develop the record by contacting Dr. Abejuela to clarify the ambiguity. See Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."); see also Dean, 2015 WL 6158874, at *7 ("[I]f the ALJ found Dr. Dixon's assessment of functional limitations 'too vague to be useful' based primarily upon Dr. Dixon's failure to define the terms 'mild' and 'moderate' in his assessment, the ALJ should have simply re-contacted Dr. Dixon and requested further clarification of his opinion.") (citing Mayes, 276 F.3d at 459-60). The ALJ's failure to develop the record on this issue, or otherwise to provide a reasonable, legitimate reason for rejecting the opinion, was error. See, e.g., Lisardo S. v. Berryhill, 2019 WL 773686, at *6 (C.D. Cal. Feb. 20, 2019) (ALJ erred in discounting examining physician's opinion by finding use of the term "moderate" was "vague and unclear" because it was not defined and did not specify functional abilities); Vasquez v. Berryhill, 2017 WL 2633413, at *7 (E.D.

---

[3](...continued)
description of plaintiff's abilities that, to some extent, took the "moderate" limitations into account (see AR 92-94).

Cal. June 19, 2017) (ALJ could not properly reject examining physician's opinion that claimant had moderate limitations by stating that the definition of the term "moderate" was "vague and ambiguous").

Defendant contends that any error was harmless because the ALJ gave great weight to the opinion of the non-examining psychiatric consultant, Dr. Abrahimi, who in turn had expressly adopted Dr. Abejuela's examining opinion as the basis for her assessment. (Defendant's Motion at 5-6; see AR 27, 90, 92). Thus, in defendant's view, by relying on Dr. Abrahimi's opinion to conclude that plaintiff was capable of "simple," "routine" tasks, with additional social limitations, the ALJ "incorporated the moderate limitations Dr. Abejuela assessed," despite stating that he gave Dr. Abejuela's opinion little weight. (Defendant's Motion at 4) (citing Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008)).

However, defendant fails to acknowledge that, unlike Dr. Abrahimi, Dr. Abejuela opined that plaintiff was moderately impaired in his ability to understand, remember, and carry out even *simple* instructions.[4] (AR 276-77). The ALJ did not include any comparable limitation in his assessment, and instead found plaintiff capable of understanding, remembering, and performing "simple routines throughout a normal workday and workweek." (AR 25). As such, the ALJ's assessment at least arguably conflicts with the moderate limitations assessed by Dr. Abejuela, and certainly cannot be said to have "incorporated" those limitations. Compare Stubbs-Danielson, 539 F.3d at 1173-74 (ALJ's assessment limiting the claimant to "simple, routine, repetitive" work adequately accounted for medical

---

[4]Dr. Abrahimi found plaintiff "[n]ot significantly limited" in this respect. (AR 92). However, she did not explain why her opinion differed on this point, despite her statement that Dr. Abejuela's opinion was "adopted because it [was] provided by an examining source and consistent with the objective evidence and [plaintiff's] function." (AR 92). The ALJ, too, never acknowledged this difference. Indeed, when assessing the two medical opinions of plaintiff's mental limitations, the ALJ never mentioned that Dr. Abrahimi purported to adopt Dr. Abejuela's opinion, and never addressed the particular similarities or differences between the two opinions. As a result, it is unclear whether the ALJ gave these opinions due consideration.

opinions that claimant had a "slow pace," both in thinking and actions, and was moderately limited in her ability "to perform at a consistent pace," *but* still retained the ability "to carry out simple tasks").

Accordingly, the ALJ erred by failing to provide a legally sufficient explanation for discounting the opinion of Dr. Abejuela, the only medical source in the record to examine plaintiff regarding mental limitations. Because the ALJ relied instead on the nonexamining opinion of Dr. Abrahimi, which partly conflicts with Dr. Abejuela's assessed moderate limitations, the Court cannot conclude that the error was harmless. See Treichler, 775 F.3d at 1099 (ALJ error harmless if (1) inconsequential to the ultimate nondisability determination; or (2) ALJ's path may reasonably be discerned despite the error) (citation omitted). Remand is therefore warranted for reconsideration of these opinions.

## V.   CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is REVERSED and this matter is REMANDED for further administrative action consistent with this Opinion.[5]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 31, 2021

>                    /s/
> Honorable Jacqueline Chooljian
> UNITED STATES MAGISTRATE JUDGE

---

[5] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted); Treichler, 775 F.3d at 1099 (noting such "ordinary remand rule" applies in Social Security cases) (citations omitted). The Court has determined that a reversal and remand for immediate payment of benefits would not be appropriate.